Filed 3/12/14  In re G.D. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re G.D., a Person Coming Under the Juvenile Court Law. | H039447 (Monterey County Super. Ct. No. J41302) |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL & EMPLOYMENT SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>T.D.,<br><br>        Defendant and Appellant;<br><br>G.D.,<br><br>        Appellant. | |

T.D. (mother) appeals from a juvenile court's order denying her petition to modify without an evidentiary hearing.  (Welf. & Inst. Code, § 388.)[1]  G.D. (child) (born 2003) joins in mother's appeal.  The petition sought to modify an order mandating supervised visits between mother and child.  Mother argues that the juvenile court erred, because she had satisfied her burden to make a prima facie showing of changed circumstances and that the modification would be in the best interest of child.  We affirm.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

*The Dependency Action*

The Monterey County Department of Social and Employment Services (Department) filed the underlying dependency petition on September 6, 2006, pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). Police officers had found child, who was small and developmentally delayed, and two of his brothers alone in the early morning on September 3, 2006, in filthy living conditions. The juvenile court declared child a dependent on October 20, 2006, removed him from his parents' custody, and ordered reunification services for both parents. Mother was convicted of one count of felony child endangerment and placed on probation on June 7, 2007. At the 12-month review hearing the juvenile court terminated father's reunification services. Child was returned to mother's custody in February 2008.

At the first semi-annual review hearing on September 19, 2008, the Department reported that mother was not meeting her objectives regarding substance abuse and was leaving child in the care of his older siblings. At the second semi-annual review hearing on March 13, 2009, the Department reported that Child Protective Services had investigated mother for allegedly making threatening phone calls to her oldest son while drunk.

On January 14, 2010, the Department filed a supplemental dependency petition (§ 387) seeking to remove child from mother's custody, alleging that mother had been found in possession and under the influence of alcohol. The Department reported that mother had lied to the juvenile court about her alcohol consumption and had placed child's safety

---

[2] We have taken judicial notice of the records and our opinions in *In re G.D.* (Oct. 26, 2011, H036689 [nonpub. opn.]) and *In re G.D.* (Oct. 26, 2011, H036749 [nonpub. opn.]). We will adopt and incorporate by reference the relevant background and facts from these prior appeals.

2

at risk. The juvenile court found the allegations in the supplemental dependency petition true on March 5, 2010, removed child from mother's custody, denied reunification services, and set a selection and implementation hearing (§ 366.26).

*The First and Second Petitions to Modify and the Section 366.26 Hearing*

Mother filed a petition to modify the March 5, 2010 order on June 7, 2010, alleging that she had maintained her sobriety since December 2009. The Department filed a report for the section 366.26 hearing recommending adoption as the permanent plan. The juvenile court denied mother's section 388 petition on July 23, 2010, and set the section 366.26 hearing.

Mother filed a second petition to modify (§ 388) on January 3, 2011, alleging that she had graduated from drug and alcohol rehabilitation class, was taking parenting classes, and was participating in Alcoholics Anonymous (AA). After setting the matter for an evidentiary hearing, the juvenile court denied mother's section 388 petition. Mother appealed this order. (*In re G.D.* (Oct. 26, 2011, H036689) [nonpub. opn.].)

At the section 366.26 hearing, the juvenile court ordered guardianship as the permanent plan. The Department appealed this order. (*In re G.D.* (Oct. 26, 2011, H036749) [nonpub. opn.].)

*The Third Petition to Modify*

On April 13, 2011, mother filed her third petition to modify (§ 388) seeking enforcement of the March 2011 visitation order, as the department had unilaterally reduced visits to once a month. At a hearing on April 27, 2011, the juvenile court suggested that the parties meet to come up with a reasonable visitation schedule for mother and child that would be in child's best interest and deferred ruling on the visitation issue.

After an unsuccessful mediation, the parties agreed on an assessor, Patricia McDermott, on September 21, 2011. Mother and guardian agreed that the assessor's

3

determination on supervised visitation during the pending appeals would be determinative and final.

On October 26, 2011, this court issued its decision in mother's appeal over the first section 388 petition, affirming the juvenile court's order denying the petition. (*In re G.D.* (Oct. 26, 2011, H036689) [nonpub. opn.].) That same day, this court also issued its decision in the Department's appeal over the order granting guardianship after the section 366.26 hearing, affirming the juvenile court's order. (*In re G.D.* (Oct. 26, 2011, H036749) [nonpub. opn.].)

McDermott filed her assessment on December 14, 2011. McDermott opined that mother appeared to be in "semi denial about the neglect that happened to [child] in his first three years." McDermott stated that it appeared mother took personal offense when the juvenile court began exploring guardianship as a permanent placement option and that the relationship between mother and guardian had deteriorated. She also expressed concern over mother's plan to have a different family, instead of guardian, adopt child. Nonetheless, McDermott acknowledged that mother had made a number of positive improvements in her life. McDermott recommended that supervised visits continue once a month for two hours and also recommended that mother and guardian start counseling to work on their relationship.

*The March 28, 2012 Status Review Hearing*

On February 28, 2012, the Department requested that the case be calendared for a status review hearing and submitted a status review report recommending the court affirm guardianship as the permanent plan. The report noted that the guardian had become alarmed after becoming aware that mother had posted a photograph of child on a public Facebook page requesting money "to help bring [child] home." Additionally, the report noted that child was thriving under the guardian's care and was growing "physically,

4

socially[,] and academically." The Department recommended termination of the dependency and that mother be granted once-monthly supervised visits with child.

Mother filed a letter with the trial court on March 28, 2012, the date of the hearing, requesting that "the idea of unsupervised visits be revisited before the dependency is dismissed." Mother expressed concerns over McDermott's recommendation for supervised visits and denied having a public Facebook posting with a picture of child. Mother urged the court to consider her request because she did not believe two hours of supervised visits per month were adequate to maintain the relationship child had with mother and his siblings. Mother also filed a letter from Katharina Garrido, the supervised visitation coordinator overseeing mother's visits with child, who reported that the supervised visits were going well.

During the March 28, 2012 hearing, the court accepted mother's letter and the Department's status review report and adopted the findings made in the Department's status review report. The court ordered the guardianship continued as the permanent plan and ordered supervised once-monthly visits with child. The dependency was dismissed.

*The Fourth Petition to Modify*

Mother filed a fourth petition to modify (§ 388) on November 8, 2012. Mother asked the court to modify the permanent plan to terminate guardianship, reinstate reunification services if necessary, or in the alternative, grant unsupervised visits (including overnight visits) or extend supervised visits to once-weekly visits including child's siblings and mother's fiancé. Mother asserted that the changes would be in child's best interest because it would maintain and reinstate the familial attachments between mother and child.

Mother attached a declaration to her petition to modify explaining her changed circumstances. Mother asserted that she had been sober for three years, was attending weekly AA meetings, was sponsoring others, and was maintaining consistent meetings

5

with her own sponsor. She also volunteered and served as an inter-group representative for her local AA group, and had previously served as a secretary for the group for nine months. Mother was now living with her fiancé in a gated community with two of child's older siblings and had recently given birth to a baby born April 2012. Working approximately 30-40 hours a week, she had also been employed by the same company for three years as a marketing executive and had her own business selling baby accessories. She had also taken a child development class, had attended a nutritional seminar focusing on special diets for special needs individuals, had taken part in a webinar on using technology to enhance learning for individuals with autism spectrum disorder, and was attending a monthly special needs support group for parents and caretakers of children with special needs. Mother was attending therapy by herself and had attended a parenting a class with her fiancé.

Guardian filed an opposition to mother's petition on December 12, 2012. Guardian's opposition asserted that child had lived with her for approximately four and a half years, and that she was concerned with mother's history of substance abuse and her history of manipulating and lying to the social services agency and the court. The guardian noted that mother still had a public Facebook post with a photo of child. Guardian also alleged that mother's fiancé had multiple DUIs and had been on probation himself until 2010.

Guardian also argued that much of mother's petition to modify was duplicative of the changes she asserted at the status review hearing in March 2012 and her earlier petitions to modify. Specifically, guardian noted that in February 2011 mother had also claimed she was sober, was attending AA meetings, and had a flexible job. Guardian opined that "[t]he few things that appear to have changed in [mother's] life are that she has a new baby, her boyfriend (the father of her new baby) has become her fiancé, she started a new business, and she lives in a larger house. All of these things that have

6

changed in her life have the potential of creating more stress on [mother].  More importantly, these things would potentially take time away from spending as much time with [child] as he requires in light of his substantial needs."  The Department also opposed mother's petition to modify, arguing that mother had not made a sufficient prima facie showing that the modification would be in child's best interests.

The juvenile court held a hearing on December 19, 2012, on the issue of whether mother had sufficiently made a prima facie showing warranting a full hearing on her section 388 petition.[3]  After hearing argument from the parties, the juvenile court continued the hearing to a later date.

Mother filed a supplemental memorandum of points and authorities supporting her petition to modify on January 31, 2013.  Attached to the memorandum were numerous documents including letters from women she was sponsoring through her rehabilitation program, a letter from a daycare provider, documentation for her volunteer work, a letter from the social worker who supervised her visits with child, notes from the nutritional seminar she attended, and a copy of the course description for the childcare course she took.  Mother also filed supporting declarations from child's two older brothers, her fiancé, and her sponsor.

During the February 4, 2013 hearing, the court noted that it understood the parties were "agreeable to returning to Pat McDermott for what I will call an update."  The court then set the matter for an additional hearing on whether "the parties will be meeting with Ms. McDermott and any further issues we need to take up."  On February 6, 2013, mother indicated that she was withdrawing her request for reunification services and termination of the guardianship and was focusing on the issue of visitation.  Mother reiterated that she would like to receive information about child and his medical issues

---

[3] In its order setting the hearing, the juvenile court stated that the purpose of the hearing was to determine if a further hearing should be held.

and would like to have either unsupervised visits or more supervised visits. The parties agreed to return to McDermott for an assessment.

McDermott filed an updated assessment on March 4, 2013. The assessment noted that mother had made many positive developments. However, McDermott opined that it seemed that mother did not realize that the guardian had assumed the legal role as child's primary caretaker while mother had been awarded visitation rights. McDermott reasoned that "[a]s long as these two women are unclear or misinformed about their roles in [child's] life there can be no trust between them." McDermott stated that she believed mother wanted to be child's primary parent, and that she recommended supervised visits were in order "[u]ntil [mother and guardian] sort out their roles."

On March 13, 2013, the juvenile court held a hearing on the issue of visitation. The guardian and the department argued that the petition should be denied without a further hearing, as mother had failed to meet her burden to make a prima facie showing of changed circumstances and that the modification requested in the petition would be in child's best interest. The juvenile court denied mother's petition without ordering a full evidentiary hearing and mother appealed.

### DISCUSSION[4]

Mother argues that the juvenile court erred in denying her section 388 petition without a hearing, because she met her burden to establish a prima facie showing that there were changed circumstances and that the change requested in the petition might be

---

[4] As mother notes in her reply brief, the argument portion of the Department's brief does not include citations to the record for the referenced factual matters. Mother argues that we should therefore deem the Department's arguments forfeited. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) However, the Department did make sufficient record citations in its statement of facts. Nonetheless, we caution the Department that to comply with rule 8.204(a)(1)(C) of the California Rules of Court, a party must "[s]upport *any reference* to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Italics added.)

in child's best interest.  Mother also claims that the juvenile court employed improper procedures when it ordered hearings and heard argument from counsel on the section 388 petition.

### A. **Section 388 Petitions**

Section 388, subdivision (a)(1) provides:  "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  The court "shall order that a hearing be held" if it appears the child's best interest would be served by the proposed change of order.  (§ 388, subd. (d).)

The procedural requirements for section 388 petitions are set forth in California Rules of Court,[5] former rule 5.570.[6]  Per former rule 5.570(a), "[a] petition for modification must be liberally construed in favor of its sufficiency."  However, if the petition fails to state a change of circumstance or new evidence, the court may summarily deny it.  (Former rule 5.570(d).)  Former rule 5.570(f), provides:  "If all parties stipulate to the requested modification, the court may order modification without a hearing.  If there is no such stipulation and the petition has not been denied ex parte under section (d), the court must order that a hearing on the petition for modification be held within 30 calendar days after the petition is filed."

Former rule 5.570(h), which governs the conduct of hearings on section 388 petitions, provides that the hearing is conducted in the same manner as a dispositional hearing if, among other things, "[t]here is a due process right to confront and cross-examine witnesses."  (Former rule 5.570(h)(2)(C).)  Otherwise, "proof may be by

---

[5] Subsequent unspecified rule references are to the California Rules of Court.

[6] Rule 5.570 has been subsequently amended, effective January 1, 2014.  We cite the version in effect at the time of the proceedings below.

9

declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." (Former rule 5.570(h).)

The petition to modify a prior order must include: (1) a showing of changed circumstances; and (2) the requested modification must be in the child's best interests. The burden is on the petitioning party to show both of these elements. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) However, the petitioner need not prove he or she will be likely to prevail on the petition before a contested hearing may be set. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431-432.) Rather, a party is entitled to such a hearing so long as the petition makes a prima facie showing of a change of circumstance such that the proposed modification "*might* be in the child's best interest." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.)

Conversely, the court need not order a hearing on the section 388 petition where the allegations, even when liberally construed, do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) A prima facie showing is made where the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 594.) In determining whether the section 388 petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

We review a summary denial of a section 388 petition for abuse of discretion and will not disturb its decision unless it is arbitrary or capricious, or exceeded the bounds of reason. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.) " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Brittany K.*, *supra*, at p. 1505.)

B.  **Denial of Mother's Section 388 Petition**

Mother argues that the juvenile court abused its discretion when it denied her petition without ordering an evidentiary hearing, because she had made a prima facie showing of changed circumstances and that the modification would be in child's best interests.[7]  We disagree.

Initially, mother reasons her changed circumstances should be evaluated from the date of the March 2011 order granting supervised once-monthly visits, instead of the March 2012 order which also granted once-monthly supervised visits.[8]  Indeed, mother's petition specifies she sought to modify the March 2011 order, presumably because that is where the juvenile court terminated mother's reunification services and granted guardianship.  Mother argues that she demonstrated changed circumstances either from the March 2011 order date or the March 2012 order date.  We conclude that whether we analyze mother's purported change of circumstances from March 2011 or from March 2012, it was not an abuse of discretion for the court to conclude that she had not made a prima facie showing.

*Changed Circumstances*

Mother's petition alleged numerous positive improvements in her life which she asserted sufficiently demonstrated a change of circumstance.  Her petition asserted that

---

[7] Initially, mother's petition also requested termination of the guardianship and reinstatement of her reunification services.  Later, mother decided not to pursue these modifications.

[8] Mother also argues that the once-monthly supervised visits recommended by McDermott were meant to be temporary and should have expired upon resolution of her pending appeals in *In re G.D.* (Oct. 26, 2011, H036689 [nonpub. opn.]) and *In re G.D.* (Oct. 26, 2011, H036749 [nonpub. opn.]).  Regardless of the temporary nature of the parties' agreement to abide by McDermott's recommendations, the juvenile court ordered once-monthly supervised visits during the March 2012 hearing.  The court did not indicate that this visitation order was temporary.

11

she had maintained consistent visits with child, had been sober for almost three years, had a stable job, and had an improved housing situation. Mother submitted a declaration from her sponsor attesting that she had been attending AA meetings since 2011 and, amongst other items, submitted documentation showing she took a child development class at a local community college.

Mother argues that *In re Hashem H*. (1996) 45 Cal.App.4th 1791, where the appellate court reversed the juvenile court's order summarily denying the mother's petition for modification, is persuasive. The mother in *Hashem H*. introduced evidence that she regularly participated in therapy and had attached to her petition a letter from the therapist indicating that she had made significant progress in resolving the problems that led to the dependency. (*Id*. at p. 1797.) The letter also stated that mother could provide a safe and stable home for her son. (*Ibid*.) The appellate court in *Hashem H*. concluded that the evidence was sufficient to make a prima facie showing of changed circumstances, as a "fair reading of the petition indicates that appellant's mental and emotional problems which led to the removal of Hashem from her home had been successfully resolved through therapy." (*Id*. at p. 1799.)

Here, the changes mother cites to in her petition do not necessarily satisfy her burden to make a prima facie showing. The juvenile court is entitled to consider the entire factual and procedural history of the case when considering a section 388 petition. (*In re Jamika W*. (1997) 54 Cal.App.4th 1446, 1450-1451.) The last time mother filed a formal section 388 petition in March 2011 she also alleged that she was attending AA meetings and was maintaining her sobriety. Mother had previously suffered through periods of alcohol abuse even after the initiation of the dependency proceedings, which led to the denial of her reunification services with child in 2010.

Certainly, mother alleged a number of positive improvements in her petition. However, our role is not to determine whether we believe mother should have been

12

afforded a hearing; we must evaluate the juvenile court's finding that mother failed to make a prima facie showing for abuse of discretion. Given mother's history of failing to maintain her sobriety, the juvenile court's conclusion that mother did not allege a prima facie showing of changed circumstances did not exceed the bounds of reason. (See *In re Marcelo B.* (2012) 209 Cal.App.4th 635 [finding that father's participation in 12 meetings, completion of substance abuse program and attendance at parenting classes was not prima facie evidence of changed circumstances due to father's extensive history of alcoholism].)

*Best Interest*

Regardless, even if mother had made a prima facie showing of changed circumstances, she did not meet her burden to show that the proposed modification would be in child's best interest. Mother asserted in her petition that the proposed changes would be better for child because it would "return the child to his biological mother and his siblings, would maintain and reinstate the familial attachments between mother and child and child and siblings, [and] reinstating reunification services and allowing unsupervised visits would provide better transition for the child." Attached to her supplemental memorandum on the petition to modify were declarations from mother's three older sons (child's siblings), her fiancé, and child's grandparents. Mother's older sons declared that they had a difficult time seeing their younger brother and that the guardian had other special needs children in her care making it difficult for her to give child the attention he needs. Mother's parents asserted in their declaration that they believed child would rather be with family than with the guardian.

These statements are assertions about how it would be in child's best interest if he was placed with mother and how mother and child's older sons would benefit from increased visits. Mother's declaration conclusively stated that "there is no reason for supervised visits at this time," that "one monthly two hour supervised visit is not enough

13

time to spend together" with child, and that the limited visits have "hindered [child's] ability to maintain sibling relationships." She also argued that child had an emotional attachment to mother. However, in order to make a prima facie showing, mother must proffer facts in support of her position, which she failed to do. (*In re Edward H.*, *supra*, 43 Cal.App.4th at p. 593.) Mother provided evidence that child enjoyed visits with mother and that child's siblings would like increased visits with child, but there was no showing that child himself may benefit from unmonitored or additional visits, or from mother's receipt of information regarding his medical needs.

In sum, the juvenile court did not abuse its discretion when it determined mother had not met her burden to make a prima facie showing of changed circumstances and that the change requested might be in child's best interest. Accordingly, there was no error in the court's summary denial of mother's petition to modify.

### C. **Procedure Employed by the Juvenile Court**

Mother argues that the juvenile court employed improper procedures during its hearings on her section 388 petition. She also claims that the juvenile court's decision suffered from erroneous misconceptions regarding her previous section 388 petitions. We conclude that the juvenile court did not err.

*Quasi-hearings*

First, mother maintains that the juvenile court erred in holding several hearings on the section 388 petition where it allowed the parties to present argument. In part, mother's argument is premised on the assumption that the juvenile court is required to set a full evidentiary hearing if it sets a hearing on a section 388 petition. A court may, in the exercise of its discretion, set the matter for a nonevidentiary hearing. (See *In re E.S.* (2011) 196 Cal.App.4th 1329, 1340.) This is exactly what occurred here. The juvenile court ordered a hearing to "determine if a further hearing" should be held and to determine if the best interest of the child may be promoted by the proposed change.

14

During these additional hearings, the juvenile court heard argument from counsel for all parties, and also accepted into consideration the evaluation by McDermott, which no party objected to. It then denied mother's petition without ordering any additional hearings.

Mother argues that the procedure was statutorily unauthorized, citing to *In re Lesly G.* (2008) 162 Cal.App.4th 904 (*Lesly G.*).[9] However, *Lesly G.* is not instructive, as it involved an older version of the Judicial Council Forms, form JV-180 (form JV-180) described by courts as "internally inconsistent and ambiguous on the issue of whether a hearing is being held." (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080 (*C.J.W.*).) In *Lesly G.*, the juvenile court checked the box next to an item on the form that stated " '[t]he best interest of the child may be promoted by the requested new order, and . . . the request states a change of circumstances or new evidence.' " (*Lesly G.*, *supra*, at p. 913.) Inconsistently, the juvenile court also checked the box next to an item that read " '[t]he judge will not hold a hearing,' " rendering the order incoherent. (*Ibid.*) The appellate court in *Lesly G.* determined that the juvenile court violated procedural due process when it failed to hold a hearing on the petition after ruling that the best interest of the child may be promoted by the petition and that the request stated a change of circumstance or new evidence. (*Id.* at p. 915.)

In contrast to the order at issue in *Lesly G.*, the juvenile court's actions here were not so ambiguous. At no point did the court find that mother satisfied her prima facie burden.[10] The juvenile court's initial order scheduling the hearings in question expressly

_____

[9] In her opening brief, mother argued that the juvenile court's actions were in excess of its jurisdiction. Mother withdrew this argument in her reply brief.

[10] We therefore agree with mother that *In re C.J.W.*, *supra*, 157 Cal.App.4th 1075, is distinguishable. There, when filling out form JV-180, the juvenile court also made the ambiguous finding that the best interest of the child may be promoted by the requested new order but that the " 'judge will not hold a hearing.' " (*Id.* at p. 1080.)

15

states that the hearing was scheduled "to determine if the best interest of the child may be promoted by the request" and if a "further hearing should be held." It is true that a court's improper denial of a full and fair hearing on the merits of a section 388 petition violates the petitioner's constitutional right to procedural due process. (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416.) The right to such a hearing, however, is not triggered unless the petitioner has made the necessary prima facie showing. (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) Once the juvenile court determined that mother had failed to meet her threshold burden, no additional hearing was required.

Additionally, to the extent mother contests the juvenile court's consideration of McDermott's updated assessment, there is nothing in the record to suggest that the juvenile court relied on the evaluation when it determined that the petition failed to state a prima facie case or that it credited the information provided in the evaluation over the factual allegations in mother's petition. The juvenile court made no mention of the assessment when it denied mother's petition.

*Requiring the Parties to Meet with McDermott*

Mother also argues that the juvenile court employed improper procedure when it ordered the parties to meet with McDermott for an updated assessment. However, the record indicates that all parties, including mother, agreed to meet with McDermott.[11] In fact, the court explained that it wanted to "give counsel an opportunity to meet and confer on the issues and an opportunity if [mother] desires to go back to Ms. McDermott and indicate to her why she should change her recommendation." There is nothing in the record to suggest that the juvenile court required that the parties meet with McDermott before it would make a ruling on mother's section 388 petition.

---

[11] In the continued hearing on the section 388 petition on February 4, 2013, the juvenile court acknowledged that it understood that "the parties, the guardian and the mother are agreeable to returning to Pat McDermott for what I will call an update."

16

*Erroneous Misconceptions Regarding Previous Section 388 Petitions*

Mother contends that the record indicates the juvenile court held several misconceptions regarding the procedural aspects of the case. She points to portions of the record where statements made by the parties' counsel and the court did not accurately reflect what had happened in the dependency action. She also claims that the juvenile court never ruled on her earlier petition to modify which she filed in April 2011. Mother argues that these flawed assumptions ultimately tainted the juvenile court's ruling on her section 388 petition. However, it is unclear from the record whether these alleged misconceptions actually influenced the juvenile court's determination. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The record does not affirmatively reflect that the juvenile court relied on a flawed perception of the procedural history of the case when making its ruling. Therefore, mother has not demonstrated the juvenile court erred.

*Mother's Credibility*

Lastly, mother contends that the juvenile court should not have relied on any of opposing counsel's arguments concerning her credibility. Mother is correct that a prima facie showing refers only to "those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited." (*In re Edward H.*, *supra*, 43 Cal.App.4th at p. 593.) However, mother does not show that the trial court relied on any credibility arguments when it made its determination that mother did not make a prima facie showing warranting a full evidentiary hearing. Additionally, mother's prior dishonesty regarding her sobriety is part of the factual history of the case, which the juvenile court was entitled to consider. (*In re Jamika W.*, *supra*, 54 Cal.App.4th at pp. 1450-1451.) In sum, we find no basis for mother's assertions.

17

## DISPOSITION

The order denying mother's Welfare and Institutions Code section 388 petition is affirmed.

_____
                              Premo, J.

WE CONCUR:


_____
         Rushing, P.J.


_____
         Elia, J.